## JONES v. SECHTEM.

Nos. 18026, 18135, Consolidated. Opinion Filed June 5, 1928.

(Syllabus.)

**Damages—Evidence—Proof of Duration of Disability from Brain Injury—Necessity for Expert Testimony.**

The question of the duration of disability from brain concussion or other injury to the brain caused by a blow on the head, without displacement of the bone fragment, is one of science to be determined from the testimony of skilled and professional persons, and in an action for damages by reason of such injury, the trial court is not warranted in submitting the question of the permanency of the injury to the jury as an element of damage, where there has been produced no affirmative evidence by expert witnesses reasonably tending to show that such injury will be permanent.

Commissioners' Opinion, Division No. 2.

Error from District Court, Oklahoma County; Wm. H. Zwick, Judge.

Action by Anna Sechtem against the receivers of the Oklahoma Railway Company and Luther Jones. Judgment for plaintiff against the defendant Luther Jones, and he appeals. Reversed, and remanded for new trial.

Cheek & McRill and Cargill & Looney, for plaintiff in error.

Gomer Smith and Fred M. Hammer, for defendant in error.

JEFFREY, C. This was an action commenced by Anna Sechtem, as plaintiff, against the receivers of Oklahoma Railway Company and Luther Jones, as defendants, in the district court of Oklahoma county, for damages for personal injuries received by plaintiff when an automobile truck, driven by an employee of the said Luther Jones, collided with a street car on which plaintiff was riding, and which was operated by the receivers of the Oklahoma Railway Company. The injury occurred at the intersection of Main street and Harvey avenue in the city of Oklahoma City, on the 10th day of March, 1926. The cause was tried on June 26, 1926, and a demurrer, on behalf of the receivers of the Oklahoma Railway Company, to plaintiff's evidence was sustained. A verdict of the jury was returned in favor of plaintiff against the defendant Luther Jones for the sum of $8,500. Judgment was duly rendered thereon, and defendant has appealed.

On October 27, 1926, defendant Luther Jones filed a verified petition for new trial based on newly discovered evidence. The petition alleged that shortly after plaintiff recovered a verdict against the defendant, the basis of which in part being permanent disability, she began work at her former position, and had worked there continuously. When the petition came on for hearing, defendant offered evidence in support of his petition, but the trial court refused to hear it, and dismissed the petition. A second appeal was then lodged in this court. The two appeals have been consolidated, and will be disposed of together.

The first assignment of error is that the court erred in instructing the jury that it might take into consideration whether or not the alleged physical injuries were permanent or temporary in character. That portion of the instruction complained about is as follows:

"* * * And in determining the amount of her recovery, if any, you may take into consideration the nature and character of the alleged physical injuries sustained by her; whether the same are temporary or permanent in their character; the pain and suffering, if any, endured by her by reason of said injuries; the loss of any earning

capacity, resulting from her inability to perform the usual work in which she was engaged at the time of said injury, or other work and labor, and then give her such recovery as will reasonably compensate her for said injuries when measured by these instructions."

It is contended that there is no competent evidence tending to prove that plaintiff's injuries were permanent in character, and that therefore it was error to submit that question to the jury. The evidence pertaining to the injuries, the nature and extent thereof, is substantially as follows: That at the time plaintiff was injured she was 40 years old, weighed 158 pounds, and was strong and healthy; that soon after she boarded the street car, she was suddenly knocked to the floor and became unconscious for a few seconds; that she was confined in the hospital seven days, was under a nurse's care five days after being returned to her home, and had been unable to do her housework up to the date of trial, which was on June 26, 1926. Plaintiff further testified that she was a waitress at the time she was injured, and earned on an average of $40 per week; that since her injury she tried to follow her regular occupation, but was only able to work 12 days out of three weeks; that during the time she worked she had dizzy spells, and would have to rest during work hours; and that she finally became sick, and had not been able to work any more at the date of trial and had lost 20 pounds in weight. She further testified that while she was in the hospital she suffered great pain, and that since that time, and up to the date of trial, she still suffered pain from her head and back; and that prior to her injury her eyesight was good, but since the injury she was compelled to wear glasses in order to properly see. Two physicians testified as to plaintiff's condition. Dr. W. K. West testified that he examined plaintiff shortly after the injury; that she had a gash above her eye about two inches in length, and that she complained of pain in her head and back; that he took an X-ray picture of her head, which showed a linear fracture multiple without displacement of the fragment; and that this character of fracture is one, where there is more than one crack or line, but that the lines are straight. This witness was asked if persons with a fracture of the skull sometimes apparently recover only to later have paralysis or other disabilities resulting from that fracture, and he answered, "I can't answer that. I have never known of such a case." Again he was asked,

"Do they frequently have an apparent return to health and later have disabilities resulting from the fracture?" And he answered, "They probably do sometimes." This witness examined plaintiff at the time she was injured, on the day following, and again on the day trial was commenced. He was again asked what he would say from his knowledge of the case, and his examinations of the plaintiff as to whether or not she was able to work as a waitress where she would have to be on her feet several hours steady. He gave the following answer: "That would be very hard for me to answer except to say that it has been our experience in doing that work and seeing many cases of this type that, where the injury is simply a fracture of the skull without unconsciousness and without some mental impairment at the time of the injury, the recovery is expected." When asked as to the duration of her injury, the witness answered: "Could only answer in this way, that the history of the case you—they may be disabled for an indefinite period. Sometimes they recover from a year up and sometimes they never recover in this—"

Dr. A. B. Young testified as a witness for plaintiff. After being told the history of the case, and all the facts known, he was asked as to the probable duration of her disability. He answered, "I don't know; probably have a patient that has an injury of the brain get well entirely in a short time, and after that have an indefinite period of disability, some · running for years." Again he testified that such a person may be disabled for an indefinite period. This witness was asked if from his knowledge of the case he was able to give an opinion as to the duration of plaintiff's disability. He answered, "I don't believe I am."

Both expert witnesses emphasized the fact that they could not tell with any degree of certainty as to the duration of the injury. The best that can be said for the evidence of these two physicians, when summed up, is that some persons who suffer from skull fracture do not recover for a long' time, and some never recover. What the outcome of the other cases in this class of injuries, including that of plaintiff, is, the experts furnished the jury no affirmative evidence which would aid them in the determination of this question. We might conclude that there were several reasons why the doctors did not or could not give an opinion as to the duration of plaintiff's disability, but this would make no difference. Certainly they

did not give an opinion on this question, and there appears to be no other affirmative evidence which would justify submitting the question of permanent injury to the jury, if the rule contended for by defendant prevails.

It is a settled rule in this jurisdiction that, where the injuries complained of are subjective in their nature, the question of the cause and extent thereof is one of science, and must be determined by the testimony of skilled professional persons. Counsel for plaintiff concede this to be the established rule, but insist that not all of the injuries sustained by plaintiff were of the subjective nature. It should be sufficient to observe that this consideration involves only the question of permanent injury, and the record discloses that there could be no permanent injury unless it was from the effect of the skull fracture and brain concussion. From the evidence, plaintiff at the time of trial did not seem to be suffering from skull fracture. The condition described by the medical profession as concussion appears to be the principal cause of plaintiff's disabilities, and this, according to plaintiff's evidence, is of a very complicated subjective nature. We think the permanency of the injury is a question which must be determined by expert testimony.

Counsel for defendant contend that before a jury is warranted in allowing a recovery on the ground that an injury is permanent, there must be proof in the form of an opinion or otherwise that such injuries were reasonably certain to be permanent. This rule has been adopted by this court with reference to future pain and suffering. Shawnee-Tecumseh Traction Co. v. Briggs, 50 Okla. 566, 151 Pac. 230; Weatherly v. Mannatt, 72 Okla. 138, 179 Pac. 470. Counsel for plaintiff say that there is a distinction between future pain and suffering and permanent disability; and that this court has never applied the rule requiring proof that the disability will, with reasonable certainty, be expected to be permanent. There is a distinction between the two conditions. There may be future pain and suffering when the injury or disability is not of a permanent nature, and also there may be a permanent injury without further pain and suffering, but we perceive no good reason why the same requirement as to the character and nature of proof should not be made with reference to the question of whether a disability is permanent or temporary, as with reference to future pain and suffering. Many other jurisdictions have

laid down the rule that one is not entitled to recover for permanent injury unless there is reasonable certainty that the injury will be permanent. Kenyon v. City of Mondovi, 98 Wis. 50, 73 N. W. 314; McBride v. St. Paul City Ry. Co., 72 Minn. 291, 75 N. W. 231; Reardon v. Third Ave. R. Co., 48 N. Y. Supp. 1008; St. Louis, I. M. & S. Ry. Co. v. Bird, 106 Ark. 177, 153 S. W. 104. The facts in the Bird Case, supra, are very similar to the facts in this case. Bird, who was a small boy, was riding in a wagon when struck by a moving railroad car. He was knocked from the wagon causing an injury to his head. Aside from the immediate injury sustained, he had spasms and nervous spells every one to three weeks from the date of the accident to the date of trial, which covered a period of eleven months. Two doctors testified in that case, and they stated that, in view of all the facts and history of the case, the probabilities were against his complete recovery; that concussion of the brain and spine immediately following an injury in some cases rapidly passes away; in others it does not. The demarcation between the condition of this boy and that class of patients that do not recover from neurasthenia is uncertain. On that question the court said:

"The experts on behalf of appellee did not testify that, in their opinion, the injury to Wharton Bird was permanent. It was a matter of speculation with them as to whether it was permanent or not. This being true, it must also have been only a matter of conjecture with the jury. But to fulfill the requirements of the law, there must be affirmative testimony to the effect that the injury was permanent, before the jury would be authorized to find that such was the fact; and the court should not allow the permanency of the injury to be considered as an element of damage, where the witnesses themselves are uncertain as to whether there would be any permanent injury, and where the nature of the injury, per se, does not show that the injury was permanent."

Under the evidence in this case, to authorize the jury, in determining the amount of recovery, to consider whether plaintiff's injuries were permanent, as an element of damage, would license the jury to enter the field of speculation and base a verdict as to this item wholly upon conjecture. Under the evidence we think it was error to submit this question to the jury. We are unable to determine what part, if any, of the recovery was allowed for permanent injuries; and therefore it will be necessary to order a new trial.

There are other questions raised by the appeal, but since there is little likelihood of their arising on the new trial, they will not here be considered.

The judgment of the trial court is reversed and remanded for a new trial not inconsistent with the views herein expressed.

BENNETT, HERR, DIFFENDAFFER, and HALL, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 22 C. J. p. 499, §596.