Robert E. MAPLES, Plaintiff in Error,

v.

Russell BRYCE, an infant under the age of 21 years, who sues by Rudell Bryce, father and next friend, and Rudell Bryce, individual, Defendants in Error.

No. 41007.

Supreme Court of Oklahoma.

May 29, 1967.

Rehearing Denied June 27, 1967.

Stubbs, Maynard & Nixon and Charles W. Stubbs, Oklahoma City, for plaintiff in error.

Alfred M. Parsons, Shawnee, for defendants in error.

PER CURIAM:

This action was originally brought in the District Court of Pottawatomie County, Oklahoma, and is an action for damages arising out of the collision of two automobiles. The suit is brought by a minor, Russell Bryce, by and through his father, Rudell Bryce. The father has joined in the action in his individual capacity. The boy was a passenger in an automobile which was being operated by his aunt. The car had just crossed a narrow bridge on a county road approximately one-half mile west of Bethel School when it collided with the defendant's vehicle, which was headed in the opposite direction. There was a controverted question of fact concerning whether the defendant's car was partially on the wrong side of the center of the road at the time of the collision. The speed of defendant's car also was involved. As a result of the accident, the plaintiffs contend that the boy suffered a fractured mandible (lower jawbone), the loss of two teeth, a "possible" concussion, a possible back injury and a traumatic neurosis which might become permanent.

The case was divided into two separate causes of action. One, by the father, was for medical expenses past and future, as well as loss of the services of the minor, and the second cause by the minor, on the relation of his father, was for past and future pain and suffering, if any, and permanent disability, if any. The most the jury could have awarded on the first cause of action was $4,695.00 and on the second cause the sum of $19,600.00. The jury returned a verdict for the plaintiff on the first cause of action for $2,195.00 and on the second cause of action for $10,000.00. Defendant's motion for new trial was denied by the trial court, and the cause was brought here for review. The parties will be referred to by name or by their trial court designations.

The defendant urges as one of his grounds for reversal that the trial court erred in instructing the jury concerning the permanency of the boy's injuries, and that Instruction No. 15 was not authorized by the evidence. Instruction 15 was a more or less stock instruction, which in part stated:

"* * * And if you find that the plaintiff Rudell Bryce has lost the services of Russell Bryce during his minority, you may consider the value of such services as to future loss in an amount not to exceed $4,000.00 * * *."

Said instruction, concerning the second cause of action, further provided in part:

"* * * (in arriving at the amount) * * * you may take into consideration the age of the plaintiff, his life expectancy, his physical condition immediately before and after the accident; whether his injuries are *permanent* or otherwise, his physical impairment, if any, the pain and suffering endured and *likely to be endured* in the future, * * *" (Emphasis supplied.)

In Jones v. Sechtem, 131 Okl. 155, 268 P. 201, the trial court submitted to the jury the question of the permanency of disability resulting from a brain concussion or head injury. Two doctors testified in that case. One of these medical experts testified that the x-rays revealed a linear fracture, and that sometimes there is disability from such an injury and sometimes not. The other medical witness testified he could not give an opinion as to the "duration" of the injury. In the cited case this court pointed out that a concussion is a "subjective" injury, and that before recovery may be allowed for permanent disability resulting therefrom there must be placed in evidence the testimony of a medical expert as to whether the injury will result in permanent disability. The jury verdict and judgment was set aside and the cause remanded for a new trial with this court's comment that it could not determine what portion of the jury's verdict represented compensation for permanent disability and which part was for past temporary disability. See also Clark v. Woolley, Okl., 355 P.2d 864, in which plaintiff's complaints of a "crick" in her neck, headaches and a "nervous chill" were classified as subjective in nature and thus requiring medical proof to establish the extent and duration. In Edwards v. Chandler, Okl., 308 P.2d 295, the plaintiff's claim was for a broken arm. The doctors in repairing the extremity had placed a "pin" in the bone. This court held the injury to be objective in nature, and upon the testimony of the doctor that there would be *some* permanent disability (although he did not know how much) the jury was authorized to determine the extent of the permanent injury.

The controlling principle discussed in the above case was first announced in Shawnee-Tecumseh Traction Company v. Griggs, 50 Okl. 566, 151 P. 230, and re-affirmed in Muskogee Electric Traction Co. v. Doss, 59 Okl. 234, 158 P. 896, as follows:

"The jury, in a personal injury case, may take into consideration, in assessing the damage, the pain and suffering which may reasonably be expected in the future, provided evidence has been presented tending to show that the person injured will, with reasonable certainty, experience future pain as a result of the injury."

In Edwards v. Chandler, supra, the rule was held applicable to claims for permanent disability.

In Pine v. Rogers, 182 Okl. 276, 77 P.2d 542, the plaintiff was required to establish permanent disability, alleged to result from loss of teeth, by medical evidence.

We hold that Russell Bryce's fractured lower jaw, or mandible, loss of teeth, as well as his possible concussion and back injury, were not, under the circumstances shown by this record, the kind of injuries which, from the very nature thereof, the trier of the facts could infer either future pain or permanent disability. Therefore, unless there was competent proof by witnesses skilled in medicine which established that the complained of injuries resulted in at least some permanent disability and were of such nature as to likely result in future pain and suffering, the submission of such questions to the jury was error and will require a new trial of the cause.

The medical evidence consisted of two witnesses. Dr. T., a dentist, admitted that his qualifications were not those of an oral surgeon. He testified from the boy's x-rays that there had been a fracture of the lower jaw, and that to repair it it was necessary to remove a tooth; that this problem (regarding the loss of the tooth) could be taken care of by a bridge, and that it would cost $120.00. The dentist further stated that it would not be advisable to build a bridge for one so young, but that without it a malocclusion or a "bad bite" could develop. The question was asked:

"Q. Now then, by having mal-occlusion or a bad bite over a period of time, would that cause any permanent damage to the bony structure?

"A. Yes, *it could* in the fact that if the teeth migrate they do not meet like they were originally intended to meet, thereby causing what we call traumatic occlusion * * *."

He was also asked by plaintiff's counsel:

"Q. All right, Doctor, if that tooth was not replaced, would that have any particular effect upon his ability to gain employment or anything?

"A. * * * I don't know this to be the case."

This witness's testimony that it would cost $120.00 to build a bridge was apparently the basis for the court in its instructions limiting recovery for future medical expenses to that amount.

Summarizing the testimony of the dentist then it seems fair to say that it was his opinion that the loss of the tooth might be somewhat disabling, but that it would not limit the boy from engaging in his normal activities.

The other medical evidence was from a medical doctor who was employed some few days prior to trial for the purpose of examining the boy with the view to testifying in the cause. This witness was not the attending physician and apparently had his first contact with the boy on October 18, 1963, three days prior to the trial.

The doctor testified that the x-rays revealed evidence of a healed fracture of the lower jawbone and two missing teeth; that x-rays of the back revealed "some evidence of straightening of the vertebrae" or a loss of the normal curvature and that the vertebrae appeared normal except there was some "irregularity" in the fourth lumbar vertebra. He stated that "the significance of this is not clear." Plaintiff's counsel inquired:

"Q. Now, Doctor, is there any residual disability to an injury of that kind?

"A. Not necessarily."

* * * * * *

"Q. Now Doctor, is that what we laymen know as a compression fracture?

"A. It is *possibly* a compression fracture."

The doctor, responsive to questioning from plaintiff's counsel, testified as to what treatment would be indicated "assuming that it was a fracture." The doctor stated that this area of the back is "susceptible" to arthritis. The witness described the irregularity of the fourth lumbar as "questionable wedging." He testified that this back injury as well as the fracture of the jawbone would be "pain-producing injuries." He said he was not able to identify a skull fracture, and in answer to a hypothetical question, which included a description of the boy as "bleeding from both ears and nostrils" soon after the accident, the doctor stated regarding whether this would indicate a skull fracture that "one could be suspicious." He stated he could *not say yes or no.* The doctor testified he found "traumatic neurosis" present in the boy when he examined him and described this condition as "a form of abnormal behavior that occurs as a result of some shocking or traumatic experience."

He was then asked:

"Q. * * * And is that a permanent thing?

"A. It *may be permanent,* yes, sir.

"Q. Now then Doctor, I will ask you as to the injury that was sustained in the lumbar region of the back. Is that or could that be a permanent disability?

"A. Yes, sir, *it could be.*

"Q. What about the fractured jaw? Could that be residual?

"A. *It could be,* yes, sir."

And, on cross-examination the following appears:

"Q. Doctor, counsel asked you for possibilities of later injury, later disability. Based upon a reasonable

medical certainty, you find no disability at the present time, do you, Doctor?

"A. Tht is correct, sir.

"Q. Based upon a reasonable medical certainty, you don't expect any future disability, do you?

"A. I can't answer that, sir.

"Q. Then you have no opinion as to that?

"A. I don't, that is correct, sir."

We hold that the above evidence was insufficient to authorize the jury to return a verdict for future pain and suffering and permanent disability, including future loss of services of the minor.

Oklahoma Transportation Co. v. Phillips, Okl., 265 P.2d 467, and Denco Bus Lines v. Hargis, 204 Okl. 339, 229 P.2d 560, cited by the plaintiff as authority to support a contrary holding, are not in point.

We do not deem it necessary to pass upon other contentions of the defendant in view of the above conclusions.

Judgment reversed and cause remanded with directions to grant the defendant a new trial.

The court acknowledges the services of Tom Z. Wright, who with the aid and counsel of Wm. R. Burkett and Reuben Sparks as Special Masters, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to LAVENDER, J., for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.

IRWIN, V. C. J., and WILLIAMS, BERRY, HODGES, LAVENDER and McINERNEY, JJ., concur.

JACKSON, C. J., and DAVISON and BLACKBIRD, JJ., dissent.