**F I L E D**
United States Court of Appeals
Tenth Circuit

**AUG 5 1998**

**PATRICK FISHER**
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ANNETTE A. BLANKE, individually
and as mother and guardian of Jesse
Blanke and Krista Blanke, minors,

      Plaintiff-Appellee,

v.

BILLY E. ALEXANDER, individually;
BUILDERS TRANSPORT, INC., a
foreign corporation;  PLANET
INSURANCE COMPANY, a/k/a
RELIANCE NATIONAL INDEMNITY
COMPANY, a foreign corporation,

      Defendants-Appellants.

No. 96-5200

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 94-C-1165-BU)**

---

Daniel E. Holeman (Galen L. Brittingham and James N. Edmonds with him on the brief), of
Atkinson, Haskins, Nellis, Boudreaux, Holeman, Phipps & Brittingham, Tulsa, Oklahoma,
for Defendants-Appellants.

Mark S. Thetford (Cheryl L. Bisbee with him on the brief), of Stipe Law Firm, Muskogee,
Oklahoma, for Plaintiff-Appellee.

---

Before **BALDOCK** and **HOLLOWAY**, Circuit Judges, and **BROWN**, District Judge.[*]

_____

**HOLLOWAY**, Circuit Judge.

_____

Plaintiff-Appellee Annette Blanke (Annette),[1] on behalf of herself and her minor daughter, Krista Blanke (Krista), brought the present action in the United States District Court for the Northern District of Oklahoma under diversity jurisdiction, alleging negligence causing a December 7, 1994, collision. After a jury trial and verdict in favor of plaintiffs, judgment was entered for them on September 26, 1995. Following the denial of defendants' post-judgment motion for a new trial and an alternative motion for a remittitur, defendants timely filed a notice of appeal. We have jurisdiction under 28 U.S.C. § 1291.

## I. Background

This action arose out of a December 7, 1994, collision between a 1986 Ford Bronco driven by Annette and a flatbed tractor-trailer rig owned by defendant, Builders Transport, Inc., and driven by defendant, Billy Alexander. I Aplt. App. at 174-75; II Tr. at 192. At the time of the collision, Annette was driving northbound along State Highway 167 near the Port of Catoosa in northeast Oklahoma, with her minor children, Jesse and Krista. Prior to the accident, Alexander had been instructed by his employer, Builders Transport, to drive the rig

_____

[*]Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

[1]At the time of the incident giving rise to the causes of action, plaintiff-appellee was known as Annette Blanke. In 1994, Blanke was remarried and changed her name to Annette Atwood.

to the Port of Catoosa to pick up a load.[2]  I Tr. at 73.  Upon reaching his destination after nightfall, pursuant to his instructions Alexander pulled the rig off Highway 167 onto a road that led to an entrance to the Port of Catoosa.  After exiting the highway, Alexander discovered that the entrance was gated and closed and he stopped the rig.  At that point no part of the rig was situated on Highway 167.  Id. at 78.

A passing driver who spotted Alexander contacted him by C.B. radio and advised him of an open entrance north of Alexander's location.  Alexander surveyed his situation and determined that there was insufficient room to permit him to turn the rig around and return to the highway in a forward direction.[3]  Alexander decided that the only way to exit the closed entrance was to back the rig straight across the highway and then head north toward the open entrance.  Id. at 82-84.  As Alexander backed the rig across the highway, Annette struck the trailer with the Bronco.[4]  Id. at 86.  At the time of the collision, the rig was situated

---

[2]The parties do not dispute the fact that Alexander was an employee of Builders Transport and was acting within the scope of his employment at the time of the accident. I Aplt. App. at 175.  After the accident Builders Transport terminated Alexander pursuant to company policy.

[3]The flatbed trailer is approximately 48 feet in length, the cab is approximately 20 feet in length, and the entire rig is approximately 68 feet in length.  I Tr. at 78.

[4]Alexander testified that he had turned on his emergency flashers prior to backing the rig, I Tr. at 85, but eyewitness, Don Wolf, testified that to the best of his recollection the trailer was unlit at the time of the collision.  Id. at 108.  Wolf, who was  headed southbound at the time of the collision, testified that the rig looked like a shadow or an outline in the road and that he had to swerve his vehicle around the back of the rig in order to avoid striking it. Id. at 106 -09.  He further testified that had the rig been blocking his lane, he probably would have struck it.  Id. at 109.  Moreover, Annette testified that she does not recall street lights being in place on the portion of the highway at which the accident occurred.  II Tr. at 192-93.

approximately halfway across the highway, blocking the northbound lane. Id. at 86-87. Annette also testified that although it was dark, nothing was obstructing her view prior to the collision. However, she does not recall seeing the rig prior to impact.[5] II Tr. at 217.

As a result of the accident, Annette suffered an open Grade II fracture of her right femur and a fracture of her right ankle, the medial malleolus on the right side, III Aplt. App. 419-20, as well as extensive bruises. II Tr. at 202. Her daughter, Krista, complained of pain in her hand and back. Id. at 170, 215. Additionally, Krista testified that she was sad after the accident and scared that her mother and brother were going to die. Id. at 171.

Following the December 7, 1994, collision, Annette filed the present action on her own behalf and for her daughter Krista against defendants in the district court. I Aplt. App. at 1. In addition to naming Alexander and his employer, Builders Transport, as defendants Annette also named Planet Insurance Company, which is the excess liability insurance carrier for Builders Transport that had a contract of liability insurance covering Builders in effect on the day of the collision. Id. at 1, 4-5, 175; Aplt. Brief at 19. The jury found for plaintiffs and awarded $500,000 to Annette Blanke and $17,000 for her daughter, Krista. I Aplt. App.

Wolf testified that there are no "pole lights" at that location. I Tr. at 111.

[5]The evidence presented at trial reveals that Annette has several physical conditions which could affect or impair her vision. II Tr. at 178-85. Since 1980 her driver's licence has contained a restriction which permits daylight driving only and requires corrective lenses. Id. at 185, 222. Although Annette testified that she did not really realize she was not supposed to drive at all at night prior to the December 1994 collision, id. at 222, the evidence revealed that she was pulled over and cited in March 1994 for a violation of this nighttime driving restriction. Id. at 226-29.

- 4 -

at 238-42. However, the jury also found Annette ten percent negligent and the district court accordingly reduced her award to $450,000. Id. at 239; II Aplt. App. at 243.

Defendants-appellants' appeal presents several claims of error: (1) the district judge erred in permitting the jury to be informed of the presence of liability insurance coverage and in referring to the insurer Planet in his instructions; (2) the judge erred in submitting the permanent injury claim to the jury; (3) the judge failed to instruct on cause versus condition as requested; (4) the verdict is not supported by the record; and (5) the court erred in overruling defendants' motions for a directed verdict and for a new trial and defendants' alternative motion for a remittitur. Brief in Chief of Appellants at 2. Finding no reversible error, we affirm.

## II. Analysis

Since the present case is grounded on diversity jurisdiction, we first note that Oklahoma provides the substantive rules of law which govern this action. "A federal court sitting in diversity must apply the law of the forum state, in this case Oklahoma, and thus must ascertain and apply Oklahoma law with the objective that the result obtained in the federal court should be the result that would be reached in an Oklahoma court." Wood v. Eli Lilly & Co., 38 F.3d 510, 512 (10th Cir.1994). In this respect, we are obligated to apply Oklahoma law as "announced by that state's highest court." Hays v. Jackson National Life Ins. Co., 105 F.3d 583, 587 (10th Cir.1997). Moreover, a federal district court's state-law determinations are entitled to no deference and are reviewed *de novo*. Salve Regina College

v. Russell, 499 U.S. 225, 239-40 (1991); Wood, 38 F.3d at 512.

## A. References to Liability Insurance

We first address whether the district judge erred in permitting the jury to hear references to the insurer and about the existence of liability insurance coverage, and in referring to Planet Insurance Company in his instructions in light of 47 O.S. 1991 § 169 which permits naming a motor carrier's insurer and suing it directly.[6]

Prior to trial, defendants filed a motion in limine seeking to exclude reference to defendant, Planet Insurance, as well as to the existence of insurance coverage on the grounds of relevance and prejudice. I Aplt. App. at 13-22. The district court, in a written order, denied that part of defendants' motion seeking to withhold the name of the insurance company and the existence of liability insurance coverage. Citing Oklahoma precedent, the district judge reasoned that since an insurance company is directly liable under § 169,[7] the

---

[6]Effective November 1, 1995, the Oklahoma Motor Carrier Act was amended, and § 169 at issue here is now recodified in 47 O.S. Supp. 1996 § 230.30. However, since the trial occurred and judgment was entered in this case prior to the effective date of the amendment, we will focus exclusively on § 169 as it was written prior to the amendment. See 47 O.S. 1991 § 169.

[7]Section 169 requires motor carriers to file a liability insurance policy with the Oklahoma Corporation Commission covering public liability and property damage. Section 169 provides further that "such liability and property damage insurance policy or bond shall bind the obligor thereunder to make compensation for injuries to, or death of, persons, and loss or damage to property, resulting from the operation of any such motor carrier for which such carrier is legally liable."

general rule against references to liability insurance does not apply. I Aplt. App. at 186-89.[8]

---

[8]The district judge's order denying the defendants' motion for a new trial and alternative motion for a remittitur stated in part:

> In the instant case, Plaintiffs properly joined Planet Insurance Company a/k/a Reliance National Indemnity Company as a Defendant pursuant to section 169. Under [Oklahoma Transportation Co. v. Claiborn, 434 P.2d 299 (Okla. 1967)], the Court concludes that the mere identification of Planet Insurance Company a/k/a Reliance National Indemnity Company as a Defendant in the case, in and of itself, does not constitute reversible error. Despite Defendants' arguments to the contrary, the identification of Planet Insurance Company was not prejudicial under the facts and circumstances of this case. In the Court's view, Defendant did receive a fair trial of the issues. The Court notes that the jurors were never advised of the insurance policy limits. Moreover, the Court notes that Defendants also injected the reference to insurance in this case by informing the jurors that Planet Insurance Company a/k/a Reliance National Indemnity Company was the liability insurance carrier for Defendant, Builders Transport, Inc.
>
> The Court further concludes that it did not abuse its discretion in failing to decline identifying Planet Insurance Company a/k/a Reliance National Indemnity Company as a Defendant pursuant to Rule 403. As stated in Claiborn, the Oklahoma Legislature, by authorizing joinder of the insurance carrier under section 169, has determined that knowledge the motor carrier has liability insurance is not prejudicial. Id. Because Planet Insurance Company a/k/a Reliance National Indemnity Company was a proper party to this action, the Court concludes that the mere identification of Planet Insurance Company a/k/a Reliance National Indemnity Company as a Defendant was not prejudicial error.
>
> The Court notes that Defendants argue in their amended reply brief that even if the identification of Planet Insurance Company a/k/a Reliance National Indemnity Company were permitted in cases involving motor carriers and liability insurance carriers under section 169, it should not apply in a case under section 169 which also involves an individual truck driver. The Court, however, declines to address this argument. This argument was not raised by Defendants in their motion in limine or during trial. Moreover, it was not raised by Defendants until their amended reply brief.

II Aplt. App. 385-86.

Reference to defendant Planet Insurance was made on several occasions during trial: (1) when the case first came on for trial, the district judge announced the case number and identified all parties by name, including Planet Insurance, I Tr. at 3; (2) during voir dire of the jury panel, the district judge asked members of the panel whether any of them, or any of their close friends or relatives had "ever been employed by the Planet Insurance Company also known as Reliance Insurance Company," id. at 9; (3) during plaintiffs' counsel's voir dire of the jury panel, plaintiffs' counsel inquired,

> One thing I want to ask. There is -- Mr. Alexander is not here, the representative from Planet Insurance is not here. Are you going to hold that against my client that they didn't show up? I don't know what it shows to you, it might show that they have confidence. I don't know. But are you going to attribute anything to the fact that they didn't show up here today against my client?
>
> All right.

(Id. at 28); (4) during plaintiffs' counsel's opening statement he said that Annette

> remembers seeing a couple of sets of car lights, and that's all she remembers. She doesn't remember anything else because what she didn't know was, just minutes before, while she was dropping the kids off, Mr. Billy Alexander had driven a Builders Transport, insured by the Defendant Planet Insurance, into this southern entrance.

Id. at 50; and (5) over defendants' objection, the name of "Planet Insurance Company a/k/a Reliance National Indemnity Company" as a defendant appeared in the case caption on the title page of the jury instructions as well as on the verdict forms, and a copy of the instructions was given to the jury for purposes of deliberations. I Aplt. App. at 197; Response Brief of Appellees, Ex. 1. However, no mention was made either of Planet

Insurance or liability coverage in the district court's substantive instructions on the law. I Aplt. App. at 198-237.

Defendants strenuously argue that prejudicial error occurred when the district judge permitted the references to the existence of liability insurance and Planet Insurance Company's presence as a defendant. Brief in Chief of Appellants at 13-27; Reply Brief of Appellants at 3-17. Defendants say that federal procedural law applies in this diversity case, citing Gilbert v. Cosco, Inc., 989 F.2d 399, 402 n.2 (10th Cir. 1993) ("When our jurisdiction is based upon diversity, we apply state substantive law and federal procedural law. See Hanna v. Plumer, 380 U.S. 460, 471-74 (1965)."). Defendants contend that exclusion of evidence of insurance and of the presence of Planet as a defendant was mandated by Fed. R. Evid. 403 (evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, etc.), under which balancing was critical and which rule the judge did not apply, and that such evidence should have been excluded pursuant to Rule 403 and Federal Rules of Evidence 411 (evidence that person was or was not insured not admissible on issue whether the person acted negligently or otherwise wrongfully), 401 (relevant evidence means evidence having tendency to make existence of fact of consequence more probable or less probable), and 402 (evidence which is not relevant is not admissible). Brief in Chief of Appellants at 20, 23-24; Reply Brief of Appellants at 4.

Defendants argue that the judge erred by applying an "absolute or per se interpretation

of Section 169" as justifying its refusal to engage in the balancing required by Rule 403. Brief in Chief of Appellants at 23 (emphasis added). Further, defendants maintain that the judge never balanced probative value with prejudicial effect as to the individual defendant Alexander even though the insurance evidence had no probative value and the insurance carrier stipulated it would be bound by the verdict. Id. at 26.

We are not persuaded by the arguments and precedents relied on by defendants. We agree that federal procedural law applies in this diversity litigation. Here, however, it is outweighed by state substantive law which must be respected. The carrier, Builders Transport, was required by Oklahoma law, 47 O.S. 1991 § 169, to file a liability policy with the Corporation Commission. The direct action was authorized by state substantive law and joinder of the carrier's insurer in the personal injury action is proper. And "joinder of the motor carrier and its insurer being proper in this case, the general rule against references to liability insurance does not apply." Be-Mac Transport Co. v. Lairmore, 129 P.2d 192, 194, 196 (Okla. 1942). In construing § 169, the Oklahoma Court has observed that Oklahoma law creates "direct liability of the insurance company to the injured person because the insurer 'is liable for the injuries resulting from the operations of the motor carrier, not by reason of its bond [or policy], but by reason of the statute.'" Daigle v. Hamilton, 782 P.2d 1379, 1381 (Okla. 1989) (citing Jacobsen v. Howard, 23 P.2d 185, 187 (Okla. 1933)).

Defendants rely on Tidmore v. Fullman, 646 P.2d 1278 (Okla. 1982), in support of their argument that the district court erred in failing to prevent references to Planet Insurance

and the fact of liability coverage from the jury. In <u>Tidmore</u>, the plaintiff chose to join an uninsured motorist and the plaintiff's insurance company as defendants to litigate all issues in one action. <u>Id.</u> at 1280-81. The plaintiff sought to advise the jury of the name of the underinsured defendant's insurer and the terms of the defendant's policy, as well as the name of the plaintiff's insurer and the terms of that policy. <u>Id.</u> at 1282. However, the underinsured defendant's insurer was not a party to the action and there was no right of the plaintiff to maintain a suit against the underinsured defendant's insurer. <u>Id.</u> The Oklahoma Supreme Court held that although plaintiff's insurer was a proper party, "evidence as to the names of both insurers and the terms of their respective policies should be withheld from the jury." <u>Id.</u> at 1283. In <u>Tidmore</u>, the Court reasoned that "where the fact of liability insurance coverage is brought before the jury unnecessarily or forcefully where liability insurance coverage is not legislatively mandated and where the insurer has no direct liability to the claimant, such jury revelations are, as a matter of law, prejudicial, and if the insured is or might have been harmed thereby, reversible error." <u>Id.</u> at 1281. However, an "insurer under a compulsory insurance policy may be joined as a defendant with the insured in an action by an injured third person, generally, on the theory that under statutes requiring and controlling compulsory insurance, a direct or joint right is created in favor of the injured person against both the insured and the insurer." <u>Id.</u>

Thus, <u>Tidmore</u> is not inconsistent with the trial judge's actions here. Unlike <u>Tidmore</u>, in which liability insurance was not expressly mandated by the legislature and in which the

plaintiff was suing his own insurance carrier, id. at 1281-82, liability insurance coverage was legislatively mandated here by § 169 and Annette properly joined Builders Transport's insurer, Planet Insurance, as a defendant.[9]

One of the clearest pronouncements of Oklahoma law on this issue is found in Okla. Trans. Co. v. Claiborn, 434 P.2d 299, 303 (Okla. 1967):

> The Legislature, by authorizing the joinder as party defendants a motor carrier and its insurance carrier, in effect determined that when the liability insurance policy or bond is filed and the certificate of convenience or necessity is issued, no prejudice results from such joinder. Stated in another way, the Legislature by authorizing the joinder of the insurance carrier, has in effect determined that knowledge of insurance liability is not prejudicial to the right of the motor carrier or to its insurance carrier.

In his order denying defendants' motion for a new trial or for remittitur, the district judge explained his reasoning, stating that

> the mere identification of Planet Insurance Company a/k/a Reliance National Indemnity Company as a Defendant in the case, in and of itself, does not constitute reversible error. Despite Defendants' arguments to the contrary, the identification of Planet Insurance Company was not prejudicial under the facts and circumstances of this case. In the Court's view, Defendant did receive a fair trial of the issues. The Court notes that the jurors were never advised of the insurance policy limits.

II Aplt. App. at 385.

We are not persuaded by defendants' arguments based on the federal procedural rules

---

[9]In another case where the plaintiff brought suit against a motor carrier and its insurer, the Oklahoma Supreme Court in Hiebert v. Jones, 800 P.2d 249 (Okla. 1990), held that Tidmore is not controlling. There, the court stated that "the statutorily mandated liability insurance policy of a motor carrier creates a direct and joint liability as between the motor carrier and the insurance carrier. . . . Present case is not controlled by Tidmore . . . ." Id.

which we have noted, Fed. R. Evid. 401, 402, 403 and 411.  Rule 411 contains a general prohibition against admission of evidence concerning liability insurance, with exceptions that are not relevant here.  The general rule is that

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully.

The admissibility of evidence in diversity cases in federal court is generally governed by federal law.  Romine v. Parman, 831 F.2d 944 (10th Cir. 1987).  Nevertheless, it is well recognized that Congress did not intend the procedural rules to preempt the so-called "substantive" state rules of evidence, such as the parole evidence rule, the collateral source rule, or the statute of frauds; although the application of these rules will affect the admissibility of some evidence, they in reality serve substantive state policies regulating private transactions.  McInnis v. A.M.F., Inc., 765 F.2d 240, 245 (1st Cir. 1985); 19 Wright, Miller & Cooper, Federal Practice and Procedure § 4512 at 422-24.  We have expressed the view that in a diversity action, when there is a conflict between Fed. R. Evid. 407 excluding evidence of subsequent remedial measures, except where offered for specified limited purposes, and a contrary state rule repudiating the rule of exclusion, the state rule controls; the question of exclusion of subsequent remedial measures is a matter of state policy.  Moe v. Avions Marcel Dassault-Breguet Aviation, 727 F.2d 917, 932 (10th Cir. 1984).

We are convinced likewise that here state policy expressed in the Oklahoma statute and interpretations of it by the Oklahoma Supreme Court is involved.  Section 169 has been

- 13 -

recognized as creating a right to a joint action by an injured party against a motor carrier and its insurer, Be-Mac Transport Co. v. Lairmore, 129 P.2d at 194, and in such actions the general rule against references to liability insurance does not apply. Id. at 196. We hold that the judge's actions permitting and making references to Planet Insurance were not reversible error but were in conformity with the state's policy permitting the plaintiffs to proceed as they did.[10]

## B. Jury Instructions

We now turn to defendants' argument that the court improperly instructed the jury. In a diversity case, the substance of a jury instruction is a matter of state law, but the grant or denial of a tendered instruction is governed by federal law. Wolfgang v. Mid-America Motorsports, Inc., 111 F.3d 1515, 1525 (10th Cir. 1997). Although we review the district court's refusal to give a particular instruction for abuse of discretion, id., the "ultimate question of whether the jury was properly instructed is a question of law which we review *de novo*." Id. at 1526. Furthermore, we "must examine the instructions as a whole to determine if they sufficiently cover the issues in the case and focus on the facts presented by the evidence." United States v. Lee, 54 F.3d 1534, 1536 (10th Cir.), cert. denied, 116 S. Ct.

---

[10]Defendant-appellant Alexander contends that the references to insurance prejudiced his individual right to a fair trial. We note that the district judge declined to address this argument since it was raised for the first time in Alexander's amended reply brief on the defendants' motion for a new trial and alternative motion for a remittitur and had not been raised in their motion in limine or during trial. II Aplt. App. 386. We feel that the judge did not abuse his discretion in declining to consider the matter presented so late in the proceedings below.

247 (1995); Wolfgang, 111 F.3d at 1525.  See also York v. AT&T, 95 F.3d 948, 953 (10th Cir. 1996) ("we review *de novo* the question whether the court's instructions, considered as a whole, properly state the applicable law and focus the jury on the relevant inquiry").

## 1. Permanent Injury

Defendants argue that the district court erred in authorizing the jury to consider permanent injury in fixing damages.  At the close of plaintiffs' evidence, defendants moved for a directed verdict on the issue of permanent injury, physical impairment and disfigurement, as to both plaintiffs, arguing that insufficient evidence had been presented under Oklahoma law to permit the issue to go to the jury.  II Tr. at 234.  The judge deferred ruling on the matter for further consideration at the jury instruction conference.  Id. at 236.

At the conference, defendants again objected to the inclusion of a permanent injury instruction.  Id. at 246-47.  The judge overruled the objection, resting his decision on the testimony of Annette's medical expert, Dr. Mark Hayes, an orthopedic surgeon.  The judge noted that he had not told the jury "one way or the other whether the injuries are permanent." Id. at 248.  The judge found persuasive Dr. Hayes' testimony that there was a little bit of shortening of Annette's femur at the fracture site.  The judge also based his decision on Dr. Hayes' testimony to the effect that there exists a potential for post-traumatic arthritis, as well as soreness and stiffness in the knee because of the fracture, along with other potential difficulties.  The judge concluded by stating that "although it's not a lot of evidence, there

is some evidence in the record for the jury to make that consideration." Id.

The permanent injury question was included along with eight other factors to be considered in awarding any damages to Annette.[11] Since the jury returned a general verdict on damages, the record provides us with no means of determining upon which of the factors the jury based its award for Annette. Thus, if the permanent injury claim was improperly included, we must reverse the award of damages. Brown v. Wal-Mart Stores, Inc., 11 F.3d 1559, 1566-67 (10th Cir. 1993) (when one of two or more issues is erroneously submitted to a jury, we must reverse "if it cannot be determined whether the jury relied on the improper ground") (quoting Farrell v. Klein Tools, Inc., 866 F.2d 1294, 1299 (10th Cir. 1989)).

---

[11]The judge charged the jury that in fixing the amount of an award for Annette Blanke it might consider the following elements:

A. Her physical pain and suffering, past and future;
B. Her mental pain and suffering, past and future;
C. Her age;
D. Her physical condition immediately before and after the accident;
E. The nature and extent of her injuries;
F. Whether the injuries are permanent;
G. The physical impairment;
H. The disfigurement;
I. The reasonable expenses of the necessary medical care, treatment and services, past and future.

In addition, you may also consider the following element:

J. The reasonable expenses of the necessary medical care, treatment and services she has incurred in behalf of Krista Blanke.

I Aplt. App. at 231-32.

Under Oklahoma law before a court may authorize the jury to consider a permanent injury in fixing damages, there normally must be evidence by an expert witness that, with reasonable medical certainty, the injury is permanent. Maples v. Bryce, 429 P.2d 741 (Okla. 1967) (syllabus 1); see also Tom P. McDermott, Inc. v. Birks, 395 P.2d 575, 576 (Okla. 1964) (where proof of injury is subjective, in order to warrant damages for permanent injury, there must be expert evidence that the injury, with reasonable certainty, is permanent). However, if the injury is objective, and it is "plainly apparent from the nature of the injury," that the injured person must of necessity undergo pain and suffering in the future, the jury may infer that fact from proof of such an injury alone. Edwards v. Chandler, 308 P.2d 295, 297 (Okla. 1957); Reed, 820 P.2d at 448-449; Maples, 429 P.2d at 743.

Here Dr. Hayes testified that he is an orthopedic surgeon with board certification, reciting his education and training. III Aplt. App. at 415. He did an independent medical examination of Annette Blanke, reviewed her medical records and x-rays, gave her a physical examination, and took a history from her. She said she had been involved in an automobile accident on December 6, 1994, and as a result of that accident she had a fracture of her right thigh bone and ankle. Id. at 419-20. The records showed that she had an open Grade II fracture in which the bones are sticking out through the skin and exposed to the air. Annette was hospitalized on December 6 for nine days, went home, and then Dr. Trussell followed

her case in an orthopedic clinic. Id. at 420.[12]

Dr. Hayes testified about Plaintiff's Exhibit I-B, an x-ray dated December 13, 1994, bearing Annette's name. It showed a K wire which held the ankle fracture in place temporarily. The surgeon said the femur fracture would be painful. Id. at 426-27. Dr. Hayes discussed Plaintiff's Exhibit I-C, a radiograph from Hillcrest Hospital represented to be of Annette Blanke's femur fracture. The doctor said the x-ray "looks like the x-ray of a mid-shaft femur fracture with one fragment of bone displaced away from the two main fragments." Id. at 424. Among other things the doctor said:

> Basically it shows a mid-shaft femur fracture with one fragment of bone out, small fragment of bone, probably two centimeters in length, slightly displaced. There is a little bit of shortening at the fracture site. She's got a traction bar around it, it's got a strap. The alignment overall looks pretty good.

Id. at 426.

Dr. Hayes testified that Plaintiff's Exhibit I-E shows a femur with an intramedullary nail going down the middle of the femur bone. There is a locking screw proximally which is in the top part of the femur. Id. at 428-29. The procedure for putting in the nail is that the patient is put to sleep. A pin has to be placed across the tibia, the bone just below the knee. The surgeon drills a pin across the tibia, and then he puts a clamp on it to lock it, and then

---

[12]The record testimony from the deposition of Dr. Hayes states that Annette told the doctor the accident was on December 6, 1994, and that she was hospitalized on that date, see II Tr. 419-20. However, these statements concerning the date must have been inadvertent errors. Elsewhere the record establishes the date of the accident as December 7, 1994. See Agreed Pretrial Conference Order Stipulations, I Aplt. App. at 174.

he pulls traction on it with this pin in the bone.

An awl is used to make a hole in the bone and a drill is used to drill into the bone. Reamers, drills of different sizes, are used to drill all the way down the femur to make a channel for the rod to go through. The rod is hammered down through the femur and a screw is put in to keep the bones from rotating as they are healing. Id. at 430.

For the ankle, a pin and screw are used to pull the two fragments together. In the future a small potential exists for Annette to develop a post-traumatic arthritis, which would basically be injury which has occurred to the ankle in this region. If that occurs, it would develop within the first two years. Id. at 431-32. Dr. Hayes recommended that the nail be removed, which is routinely done about a year or two later. Dr. Hayes said that within a reasonable medical probability, Annette will have some discomfort after the hardware is removed which should last no more than two or three months and then resolve. Id. at 433-34. The removal procedure costs for removing the hardware would be the surgeon's fee, the hospital charge and the anesthesia, which should all cost probably $5,000. Id. at 435.

On cross-examination Dr. Hayes said he had only one visit with Annette Blanke on June 2, 1995. He said that the femur fracture was well healed and had excellent alignment of the bone shown in the radiographs. The ankle fracture was also well healed without limitation of motion. Id. at 441-42.

We agree with the trial judge that the evidence as a whole was sufficient for the permanent injury factor to be included in the instructions to the jury. Along with other

evidence, there was testimony about the mid-shaft fracture with one small fragment of bone out, probably two centimeters in length, slightly displaced, and with a little bit of shortening at the fracture site. Id. at 426. We feel that the proof met the minimum requirements governing submission of a permanent injury instruction under Oklahoma law. In Tom P. McDermott, Inc. v. Birks, 395 P.2d 575 (Okla. 1964), the Oklahoma Court stated:

> 'It is not necessary that the evidence adduced to prove an injury is permanent be so positive and conclusive as to establish that fact beyond any shadow of doubt before it can be submitted to a jury. It is sufficient if it reasonably tends to establish such fact. . . .'

Id. at 577 (quoting Kansas City Southern Railway Company v. Norwood, 367 P.2d 722 (Okla. 1961)).

## 2. Cause Versus Condition

Defendants also requested a cause versus condition instruction, which the district court denied. I Aplt. App. at 126; II Tr. at 250-52. Defendants essentially argue that the actual cause of the collision was not Alexander's backing of the rig across the highway at night, but rather that the collision was proximately caused by Annette's vision problems and her driving at night in violation of the daytime restriction on her driver's license.[13] Defendants say that Annette was temporarily blinded by the headlights of a passing vehicle immediately before she struck defendants' rig. Therefore defendants contend that a jury question existed on the issue whether the presence of the rig in Annette's lane of traffic was

---

[13]Annette testified that her driver's license had restrictions for "daylight driving only and glasses." II Tr. at 185.

a cause of the collision or a mere condition which allowed the collision to occur, requiring their proposed cause versus condition charge. Defendants argue that the district court erroneously concluded that the cause versus condition principle is limited to the facts set out in Thur v. Dunkley, 474 P.2d 403 (Okla. 1970), which involved a collision between a motorist and parked cars on a public roadway.

We note that in a post-trial order, the trial judge held that he did not err in refusing to submit defendants' proposed cause versus condition instruction since it gave the "Direct Cause - Defined" instruction found in the Oklahoma Uniform Jury Instructions - Civil (Second Edition). II Aplt. App. at 390-91. The judge instructed the jury that:

> Direct cause, as used in these instructions, means a cause which, in a natural and continuous sequence, produces injury and without which the injury would not have happened. For negligence to be a direct cause it is necessary that some injury to persons in the plaintiffs' situation must have been a reasonably foreseeable result of negligence.

I Aplt. App. at 220.

> The district judge's order denying a new trial and remittitur stated that:

> The Oklahoma Supreme Court has stated that the distinction between a cause and a condition is the element of foreseeability. Long v. Ponca City Hospital, Inc., 593 P.2d 1081, 1085 (Okla. 1979). 'Foreseeability is an essential element of proximate cause . . . and it is the standard by which the proximate cause, as distinguished from the existence of a mere condition, is to be tested.' Atherton v. Devine, 602 P.2d 634, 636 (Okla. 1979); . . . .

II Aplt. App. at 391. The judge held that the jury's verdicts for the plaintiffs, in light of the direct cause instruction, shows that the jury had to conclude that the injuries of plaintiffs were a reasonably foreseeable result of defendant Alexander's negligence. They accordingly

- 21 -

found that his negligence was "the proximate cause of Plaintiffs' injuries and not a mere condition." Id. Since the court had given its "Direct Cause - Defined" instruction, the judge said that a new trial was not warranted because of failure to give the defendants' "condition versus cause" instruction.

We agree with the trial judge's conclusions. The Oklahoma Supreme Court in Tomlinson v. Love's Country Stores, Inc., 854 P.2d 910, 915-16 (Okla. 1993), stated:

> Proximate cause must be the efficient cause that sets in motion the chain of circumstances leading to an injury; if the negligence complained of merely furnishes a condition by which the injury was made possible and a subsequent independent act caused the injury, the existence of such condition is not the proximate cause of the injury. "Foreseeability is an essential element of proximate cause . . ., and it is the standard by which proximate cause, as distinguished from the existence of a mere condition, is to be tested." Atherton v. Devine, 602 P.2d 634, 636 (Okla. 1979). The distinction between a cause and a condition is the element of foreseeability. . . . A condition also begins with the breach of a duty of care. With a condition, however, the subsequent injury was neither foreseeable nor reasonably anticipated as the probable result of the breach.

Similarly, the Oklahoma Supreme Court in Thur held that "if the negligence complained of merely furnishes a condition by which the injury was made possible and a subsequent independent act caused the injury, the existence of such condition is not the proximate cause of the injury." Thur, 474 P.2d at 405.

Defendants argue that Annette had serious vision problems and that she was driving at night in violation of her daytime driving restriction. They say that her negligence in operating her vehicle at night thus superseded any negligence on the part of Alexander in backing the rig across the highway, and that Annette's vision problems constitute the

- 22 -

proximate cause of the collision.

To agree with the defendants, we would have to hold that Annette's negligence as a matter of law was the proximate cause of the collision. This we decline to do, feeling that the evidence made a factual issue on proximate cause and comparative negligence for the jury. While an extreme case may permit a conclusion on proximate cause as a matter of law, this is not such a case. We agree with the trial judge's assessment in submitting the factual dispute to the jury in these circumstances. As we held in Kinnison v. Houghton, 432 F.2d 1274, 1277 (10th Cir. 1970), "the proximate cause issue was within the questions of fact for the jury to decide, and its verdict against appellants is not without support." The jury found that Annette was ten percent negligent and the appropriate reduction in the damage award has accordingly been made.

We are satisfied that the judge did not err in his instructions, which, as a whole, adequately submitted the causation and proximate cause questions to the jury in accord with Oklahoma law. There was no error in not giving the particular "Cause Versus Condition" instruction of the defendants in light of the adequate instruction given in accord with the Oklahoma Uniform Jury Instructions and cases noted.

### C. Damages

Defendants maintain that the damage awards ($500,000 to Annette and $17,000 for Krista) are excessive and contrary to the evidence; that the trial judge abused his discretion in denying defendants' motion for a new trial and their alternative motion for a remittitur;

that the verdicts were the result of passion and prejudice and the improper injection of liability insurance.

Federal law governs the granting or denial of a motion for a new trial in diversity actions in federal court. State procedure does not apply. Whiteley v. OKC Corp., 719 F.2d 1051, 1058 (10th Cir. 1983); Fed. R. Civ. P. 59. A motion for a new trial on the ground that the verdict of the jury is against the weight of the evidence is normally one of fact and not of law and is addressed to the discretion of the trial court." Campbell v. Bartlett, 975 F.2d 1569, 1577 (10th Cir. 1992). In reviewing a district court's ruling on a motion for a new trial, we do not make a determination of the sufficiency or weight of the evidence; rather, our review is limited to whether the district court's refusal to set aside the jury's verdict was a manifest abuse of discretion. Patty Precision Products Co. v. Brown & Sharpe Mfg. Co., 846 F.2d 1247, 1251 (10th Cir. 1988); Campbell, 975 F.2d at 1577.

Moreover, "federal law governs the decision whether a remittitur should be granted in a diversity case. . . . 'Under federal law, whether the trial court properly refused to grant remittitur or a new trial on the ground of an excessive damage award is tested by an abuse of discretion standard.'" K-B Trucking Co. v. Riss International Corp., 763 F.2d 1148, 1162 (10th Cir. 1985), (quoting Garrick v. City and County of Denver, 652 F.2d 969, 971 (10th Cir. 1981)); see also Sheets v. Salt Lake County, 45 F.3d 1383, 1390 (10th Cir.), cert. denied, 116 S. Ct. 74 (1995) (district court's denial of a motion for remittitur is entitled to considerable deference on appeal and will not disturbed absent a gross abuse of

discretion). In this respect, defendants bear the "heavy burden of demonstrating that the verdict was 'clearly, decidedly, or overwhelmingly against the weight of the evidence.'" Campbell v. Bartlett, 975 F.2d at 1577 (quoting Locke, 309 F.2d at 817). And "'absent an award so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate.'" Id. (quoting Barnes v. Smith, 305 F.2d 226, 228 (10th Cir. 1962)); Whiteley, 719 F.2d at 1058 (determination of damages is traditionally a jury function).

In his order denying defendants' motion for a new trial or remittitur, the district judge held that he was "not shocked by the size of the damage awards to Plaintiff, Annette A. Blanke, and Plaintiff, Annette A. Blanke, on behalf of her minor daughter, Krista Blanke. The Court cannot conclude that the jury acted out of passion or prejudice." II Aplt. App. at 387. The judge further found that the court's identification of Planet Insurance as a defendant did not cause the jury to act prejudicially or with passion. Id. Moreover, the judge determined that the instructions on damages were correct and that the court could not "impute to the jury an inability to understand the jury instructions." Id. Based on all of the proper factors which the jury could consider in fixing damages for Annette and her daughter, I Aplt. App. at 231-33, and because the jury had the opportunity to observe plaintiffs and hear all the evidence, the judge concluded that it

> [W]as the jury's function, as trier of fact, to determine the amount of damages
> that would fairly compensate them and the jury had wide discretion in making

- 25 -

that determination.  Bennett v. Longacre, 774 F.2d 1024, 1028 (10th Cir. 1985).  The Court cannot say that it was irrational for the jury to award $500,000 in damages to Annette A. Blanke, and $17,000 in damages to Plaintiff's daughter, Krista.

II Aplt. App. at 388.  The judge similarly found that since the awards of damages do not "shock judicial conscience," the grant of a remittitur is not appropriate.  Id. at 389.

We agree.  As noted, the record reveals that Annette suffered serious thigh and ankle injuries as a result of the collision, as well as other less severe injuries.  She was knocked unconscious following the accident and awoke in Hillcrest Hospital "in great pain and [she] had her leg up in the air . . . ."  II Tr. at 196.  Even though she had morphine, she still was in great pain and scared.  Id. at 200.  Her chest was bruised very badly, she had black eyes and various bruises over her body.  Id. at 202.  Because of her broken right ankle, she had a cast on her leg for some time.  Id. at 205.  Moreover, because of the extent of her leg and ankle injuries, Annette was forced to undergo extensive surgical procedures involving the insertion of hardware into her femur bone and ankle in order to repair the damage.  Annette was hospitalized for nine days.  She used a wheelchair for a couple of months around her house and crutches for about three months after her hospitalization.  Id. at 207.  Dr. Hayes said he would recommend the nail be removed later; it is not good to have a metal rod in the femur for the rest of her life.  III Aplt. App. at 433.  Annette was 31 years of age at the time of trial.  II Tr. at 175.  She quit attending college late in the semester following the collision.  II Tr. at 176.  There is a little bit of shortening of her leg where there was a mid-shaft femur fracture with one small fragment of bone out, probably two centimeters in length, slightly

displaced. Annette incurred medical bills totaling $29,564.77, III Aplt. App. at 727, and Dr. Hayes estimated her future medical expenses would be in the range of $5,000. Id. at 434-35.

Based on her injuries, the necessary medical procedures, her probable need for future medical attention, the limitations on her activities, and the pain she has experienced, we cannot say that the jury's verdict for Annette was clearly, decidedly, or overwhelmingly against the weight of the evidence. Moreover, we do not find the award to be so excessive as to raise an irresistible inference of passion, prejudice, or other improper cause.[14]

With respect to Annette's daughter, Krista, Krista's testimony shows she was nine years old at the time of the accident and at the time of trial. II Tr. at 166, 168. She remembers her mother's vehicle hitting a big truck. She heard her mother screaming. Krista's hand and her back were hurting. Krista saw her mother on the ground. Her mother said nothing back to her after Krista asked if she was "okay." Id. at 170. Krista rode in the ambulance to the hospital where the doctors helped her. After the accident Krista felt sad and scared because she "thought [her] mama and [her] brother were dying." Id. at 171. She did not go back to school the next day but did after Christmas. Krista testified that she thinks about the accident and about her "mother having another wreck." Id. at 172. Krista's medical bills amounted to $874.43 for ambulance service, emergency room charges,

---

[14]Of course, the jury's verdict of $500,000 in favor of Annette was later reduced to $450,000, due to the jury's finding that she was ten percent negligent. I Aplt. App. at 239; II Aplt. App. at 243.

- 27 -

emergency room doctor's bill, and replacing eyeglasses.  III Aplt. App. at 760.

Again, we cannot say that the trial judge erred or abused his discretion in not disturbing the $17,000 verdict for Krista.  The jury was told they could consider Krista's past physical pain and suffering, her past mental pain and suffering, and her age, among other things.  We have noted Krista's testimony about remembering her mother screaming, her mother not responding, Krista's fear and sadness because she thought her mother and brother were dying, her own age, her worry about her mother having another wreck, her back and hand hurting.  During her deposition, Annette said that to her knowledge Krista didn't really suffer any physical injuries.  II Tr. at 216.  We find no error or abuse of discretion in the trial judge's refusing to disturb the verdict for Krista.[15]

As to the verdicts for both Annette and Krista, we find the district court's rationale to be well-reasoned and supported by the record, and we decline to disturb the verdicts.  See Specht v. Jensen, 832 F.2d 1516, 1528 (10th Cir. 1987), cert. denied, 488 U.S. 1008 (1989) (district court's refusal to grant new trial motion alleging excessive damages is afforded considerable deference on appeal).  Unlike special damages, such as medical expenses and

---

[15]With respect to Krista, defendants take issue with a question submitted by the jury to the trial judge during deliberations, which read, "What happens to dollars awarded to a minor child?  Is it put into a trust account, or something similar, to be used for her future assistance?  (not medical damages - other monetary awards)."  III Aplt. App. at 792.  Over defendants' objection, II Tr. at 310-11, the judge responded that "any award in excess of $1000.00 is to be deposited in a federally insured financial institution, approved by the Court, until the child is 18 years of age.  Prior to the child becoming 18 years of age, withdrawals can be made only pursuant to a Court order made in the case in which the recovery was had."  III Aplt. App. at 793.  We find no reversible error in this response to the jury.

- 28 -

loss of earnings, which require specific proof, general damages for pain and suffering, such as those present here, are not susceptible to proof by a set dollar amount. Williams v. Missouri Pacific Railroad Co., 11 F.3d 132, 135 (10th Cir. 1993). In sum, for substantially the same reasons stated by the trial court, we find that the jury's awards do not shock our conscience, and we hold that the judge did not manifestly abuse his discretion in denying defendants' motion for a new trial or a remittitur.

### D. Directed Verdict on Medical Expenses

Lastly, we turn to defendants' argument that the district court erred in refusing to grant defendants a directed verdict on plaintiffs' medical expenses. At the close of all the evidence, defendants moved for a directed verdict on the issue of reasonable medical expenses, arguing that plaintiffs failed to introduce Annette's medical bills. II Tr. at 257. Plaintiffs countered that the medical bills were introduced through the testimony of Dr. Hayes, id., to which defendants replied that although the medical bills were discussed during his testimony, they were never offered or made a part of the record. Id. at 257-58. Plaintiffs then made a request to recall Annette and introduce the medical bills through her. Id. at 258. The district court found that the medical bills had not been offered into evidence previously during trial. Id. However, after being advised that plaintiffs' exhibit number two reflected the medical bills, the judge allowed plaintiffs to reopen and offer the medical bills. Id. at 258-59.

"Reopening a case for additional evidence is within the discretion of the trial court."

City of Wichita, Kansas v. United States Gypsum Co., 72 F.3d 1491, 1496 (10th Cir. 1996). Further, we review the trial court's denial of a motion for directed verdict *de novo*. Haines v. Fisher, 82 F.3d 1503, 1510 (10th Cir. 1996); Weese v. Schukman, 98 F.3d 542, 547 (10th Cir. 1996). In the instant case we find no abuse of discretion in permitting reopening for the introduction of plaintiffs' medical bills. We hold that the district court did not err in overruling defendants' motion for a directed verdict on this issue.

AFFIRMED.