**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 11 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KIRK REED and JENNIFER GORDON,
Parents of Travis Reed, Deceased,

      Plaintiffs - Appellants,

v.

LANDSTAR LIGON, INC., a
corporation, JACK PIERCE TRUCKING
CO., and DONALD LEE
LAMBERTSON,

      Defendants - Appellees.

No. 01-7056

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 00-CV-397-P)**

---

Edward J. Kionka (S. Daniel George, Sallisaw Oklahoma, and H. Ray Hodnett, Van
Buren, Arkansas, with him on the briefs), Carbondale, Illinois, for Plaintiffs-Appellants.

Joseph R. Farris (Jody R. Nathan with him on the brief), Feldman, Franden, Woodard &
Farris, Tulsa, Oklahoma, for Defendants-Appellees.

---

Before **MURPHY**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

      This is a negligence action brought in federal court under diversity jurisdiction.

See 28 U.S.C. § 1332. Plaintiffs' fifteen-year-old son, Travis Reed, was driving an all

terrain vehicle on a rural road in Oklahoma when a truck driven by Defendant Lambertson struck and killed him. A jury returned a verdict for $500,000, and apportioned sixty percent fault to the truck driver and forty percent fault to Travis, resulting in an overall verdict for Plaintiffs for $300,000. Plaintiffs appeal only the jury's apportionment of fault, arguing the district court improperly instructed the jury that the all terrain vehicle was illegally on the road at the time of the accident. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

I.

In April 2000, Plaintiffs attended a family gathering in rural farm country in Oklahoma. Plaintiffs' son, Travis Reed, wanted to drive his grandfather's all terrain vehicle (ATV) to his aunt's home nearby. After receiving permission to take the ATV, Travis drove it down the driveway and onto the roadway. On the road, a hill prevented easy observation of oncoming traffic, both for persons exiting the driveway, and for persons cresting the hill. After Travis entered the roadway, a truck being driven by Defendant Donald Lee Lambertson approached Travis' ATV from behind. The truck moved over to the left to pass Travis. Evidence presented at trial suggested that just as the truck approached the ATV, Travis, who apparently was unaware of the truck's presence, moved over to the left without signaling his intentions. In response, Lambertson slammed on his brakes, locking the wheels, and the truck slid out of control. The truck hit the ATV, killing Travis. Travis' parents sued the driver Lambertson; the

trucking company, Defendant Landstar Ligon, Inc.; and the agent and operator of the truck, Defendant Jack Pierce Trucking Company.

At trial, the jury returned a verdict finding Lambertson sixty percent negligent and Travis forty percent negligent. The jury awarded $500,000 in damages, which the district court apportioned according to comparative negligence, resulting in an overall verdict for Plaintiffs for $300,000. Plaintiffs appeal, claiming the district court erred by instructing the jury that ATVs "shall not . . . be permitted on the streets or highways of this state" (Instruction #14). Plaintiffs argue the erroneous instruction allowed the jury to infer Travis was negligent per se for being on the road at all, and therefore the jury may have misapportioned comparative fault. Plaintiffs appeal the jury's apportionment of fault, but not the overall amount of damages.

## II.

While the substance of a jury instruction in a diversity case is a matter of state law, the grant or denial thereof is a matter of federal procedural law. Blanke v. Alexander, 152 F.3d 1224, 1232 (10th Cir. 1998). We review for an abuse of discretion the district court's refusal to give a particular instruction. Id. We review de novo whether, as a whole, the instructions correctly stated the governing law and provided the jury with an ample understanding of the issues and applicable standards. Id.[1]

_____

[1] Defendants argue Plaintiffs did not preserve their objection to Instruction 14 because Plaintiffs objected before, but not after, the court instructed the jury. See Smith
(continued...)

-3-

Quoting from 47 Okla. Stat. § 1151(E), the district court instructed the jury that ATVs "shall not . . . be permitted to be operated on the streets or highways of this state." Plaintiffs contend that although generally ATVs are not permitted on the road, the ATV Travis was driving was an implement of husbandry legally on the road. Thus, the primary question on appeal is whether, under Oklahoma law, the ATV in this case was an implement of husbandry legally on the road at the time of the accident.

Oklahoma's motor vehicle laws generally prohibit ATVs from being operated on the State's streets or highways. 47 Okla. Stat. Ann. § 1151(E). Oklahoma has carved out

_____

[1](...continued)
v. Greyhound Lines Inc., 382 F.2d 190, 191 (10th Cir. 1967) (holding a party failed to preserve an objection to the jury instructions where the party objected prior to the court instructing the jury, but not after). Defendants argue we therefore should review Plaintiffs' claim for plain error. Smith relied on Dunn v. St. Louis-San Francisco Ry. Co., 370 F.2d 681 (10th Cir. 1966) for its holding. But Dunn did not require a party to object immediately before deliberations. See Dunn, 370 F.2d at 684 (stating that while the Court would "not say that an objection may never be properly preserved to a charge in advance," the objecting party must object with "sufficient specificity and distinctness"). Federal Rule of Civil Procedure 51 was amended after Smith specifically to allow pre-instruction resolution of objections to the instructions. See Fed. R. Civ. P. 51 advisory committee's note (1987). Plaintiffs sufficiently preserved their objection to Instruction 14 by objecting at the instruction conference and specifically stating as grounds for the objection that the ATV was an implement of husbandry legally on the road. See Fed. R. Civ. P. 51 (party must object to an instruction "before the jury retires to consider its verdict"); Gunnell v. Utah Valley State Coll., 152 F.3d 1253, 1262 n.5 (10th Cir. 1998) (plaintiff's objections at pretrial and instruction conferences sufficient to preserve issue); Abercrombie v. Osteopathic Hosp. Founders Ass'n, 950 F.2d 676, 679 (10th Cir. 1991) (plaintiff properly preserved pre-instruction objection by making clear which instruction was at issue and the grounds for objection). Consequently, we do not review this objection to Instruction 14 for plain error. Instead, we apply the usual standards in a diversity case.

an exception from motor vehicle requirements, however, permitting "implements of husbandry" to operate on the roadways so long as they are equipped with the appropriate safety devices. Id. § 11-406. Certain ATVs may qualify as an implement of husbandry when properly equipped and "when used for agricultural, horticultural or livestock-raising operations." Id. § 1-125(3).

No Oklahoma case exists interpreting these provisions.[2] Thus, as a federal court sitting in diversity, we must predict how Oklahoma's highest court would resolve this issue. See Johnson v. Riddle, 305 F.3d 1107, 1118 (10th Cir. 2002). We review the federal district court's determination of state law de novo. See Salve Regina Coll. v. Russell, 499 U.S. 225, 239 (1991). Plaintiffs contend the motor vehicle laws permit ATVs on the roads when the ATV generally is used for farming, and the legality does not

---

[2] We reviewed whether a fertilizer spreader was an implement of husbandry under Oklahoma law in Bingham v. Hollingsworth Mfg. Co., Inc., 695 F.2d 445 (10th Cir. 1982). In that case, the plaintiff sued the manufacturer of a fertilizer spreader she was towing behind her pickup truck after the spreader jack-knifed on the freeway. Plaintiff argued the spreader was required under the motor vehicle laws to be equipped with brakes. The manufacturer argued the spreader was exempt from the brakes requirement as an implement of husbandry. We held the spreader was an implement of husbandry not subject to the brakes requirement because we considered the spreader's ability to haul fertilizer on the highway as "an incidental use." Bingham, 695 F.2d at 454. Bingham does not change our analysis here. In Bingham, the question was whether the spreader was an implement of husbandry not subject to motor vehicle equipment requirements. We note that in Bingham, the spreader was being used for a farm purpose, as the plaintiff was hauling the fertilizer from her local source of supply to her farm. See id. at 446-47; 47 Okla. Stat.§ 1-125 (permitting farm wagon type tank trailers on the road for the limited purpose of bringing fertilizer from a local source of supply to a farm) (1981). Plaintiffs concede Bingham does not control in this case. See Appellants' Br. at 25 n.2 (noting Bingham "is not pertinent here").

depend on the specific purpose of each trip. Defendants successfully argued to the district court that the ATV was not an implement of husbandry because Travis was not using it for an agricultural purpose at the time of the accident. We agree. Section 1-125 contains a general definition of "implement of husbandry" followed by three specific definitions of qualifying vehicles. The general definition refers to devices "designed and adapted so as to be used exclusively" for farming. The three specific definitions include limitations on the time, manner or purpose of the device's use to qualify as an implement of husbandry. For example, in subsection one, a farm wagon type tank trailer is not an implement of husbandry unless "used during the liquid fertilizer season" and "moved on the highways only for bringing the fertilizer" from one specified location to another. In subsection two, trailers or semitrailers must be "used exclusively for the purpose of transporting farm products to market." Finally, in subsection three, an ATV qualifies "when used" for farming.

Thus, despite Plaintiffs' argument that the purpose of the trip cannot determine the legality of the ATV's presence on the roadway, the statute's plain language compels this conclusion. George E. Failing Co. v. Watkins, 14 P.3d 52, 56 (Okla. 2000) ("In the process of giving meaning to any statute, the starting point is the plain and ordinary significance of the language employed in the text."). A trailer transporting farm products to market lawfully could travel on the road, while the exact same trailer would be unlawfully on the road if the driver were going to the movies. Similarly, the ATV

lawfully could have been on the road if Travis were delivering a bale of hay to horses in another field, but was not lawful where Travis' purpose was a social visit.

Allowing certain farm vehicles to lawfully be on the road only for a few limited purposes is not illogical. "The implement of husbandry exception to vehicle codes was designed to allow farmers occasionally to tow non-complying farm equipment along the highways as they traveled short distances from one field to another or from their fields to storage areas." Bingham v. Hollingsworth Mfg. Co., Inc., 695 F.2d 445, 453 (10th Cir. 1982). But the statutes limit this privilege to the purposes for which it was enacted: only when the device is being used for certain farming activities. Plaintiffs' contention that a vehicle's legality is defined by its primary purpose would contravene the purpose of the statute. We agree with the district court that the Oklahoma motor vehicle laws are designed to restrict ATV use on the streets. Interpreting the statutes to allow ATVs primarily used for farming to be driven on the road at any time for any purpose would conflict with this general intent. The exception for implements of husbandry is limited in scope and does not create a free pass for recreational ATV use on the roads once the ATV has been equipped and is used for farming. Because Travis was not using the ATV for farming, he was not lawfully present on the roadway.

Plaintiffs argue this reading renders the statute unenforceable because officers would have to stop each ATV and inquire into the driver's purpose to determine whether the driver was complying with the law. We note that other traffic laws suffer from this

alleged infirmity. For example, an officer will never know whether a driver is properly licensed unless he stops the vehicle and inquires. Plaintiffs' own construction of the statute also would rely on subjective determinations, as the officer would not be able to tell just by looking at an ATV whether it is used "primarily" for farming. And we question Plaintiffs' contention that these provisions are unenforceable absent questioning each individual operator of an implement of husbandry. Officers can observe the vehicle's characteristics and its behavior. For example, an officer who follows the vehicle to the local shopping mall or bowling alley would have a basis for issuing a ticket absent any inquiry of the driver. The district court properly instructed the jury on this matter.[3]

III.

Alternatively, Plaintiffs argue that even if Travis was illegally on the road, that violation could not be used as evidence of Travis' contributory negligence unless the violation itself was causally connected to his death. Plaintiffs argue Travis' purpose for being on the roadway has no causal connection to whether he negligently operated the ATV. For example, if we assume his purpose for being on the road was for farming (and

---

[3] Defendants further argue that even if the ATV was an implement of husbandry, the ATV still was unlawfully on the road because the testimony showed it was not equipped with the required safety devices. Because we find the ATV was not an implement of husbandry lawfully on the road, we need not address this argument. Because we need not address the issue of safety devices, we deny as moot Plaintiffs-Appellants' motion to supplement their argument on the safety devices.

consequently he was legally on the road), the accident would have occurred exactly the same way. Thus, Plaintiffs contend the purpose of the trip does not make the driver any more or less negligent.

"When considering a party's challenge to jury instructions, our initial inquiry is whether the party properly preserved that issue for appeal by objecting at the district court level to the instruction on the same grounds raised on appeal." Comcoa, Inc. v. NEC Tel., Inc., 931 F.2d 655, 660 (10th Cir. 1991); see also Fed. R. Civ. P. 51 (party objecting to a jury instruction must state "distinctly the matter objected to and the grounds of the objection"). A party's stated grounds for objection to a jury instruction must be "'obvious, plain, or unmistakable.'" Comcoa, 931 F.2d at 660 (quoting Aspen Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509, 1514 (10th Cir. 1984)).

Although Plaintiffs clearly objected to Instruction 14 below, Plaintiffs raise the proximate cause argument as grounds for its objection for the first time on appeal. Below, Plaintiffs argued that under Oklahoma law, the ATV qualified as an implement of husbandry. In making that argument, Plaintiffs asserted that the purpose of the trip did not make a driver more or less negligent. But Plaintiffs offered this reasoning to support their statutory construction argument that it made no sense to limit an ATV as an implement of husbandry to circumstances when the driver's purpose was related to farming. Plaintiffs did not mention to the district court proximate cause, nor did they

suggest Instruction 14 was irrelevant even if Travis was illegally on the road.[4] Plaintiffs did not "obviously, plainly, or unmistakably" object below on the specific ground that even if Travis was illegally on the road, his statutory violation had no causal connection to the accident.

Defendants did not raise Plaintiffs' failure to object on these grounds in Defendants' appellate brief. Plaintiffs argue Defendants have waived the issue, and we therefore should review this matter de novo. We decline to ignore Plaintiffs' failure to object on this ground before the district court. A properly stated objection puts the district court on notice that it may be committing error, and gives the district court an opportunity to correct that error. Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 553 (10th Cir. 1999). Plaintiffs' failure to bring this matter to the district court's attention denied the district court this opportunity.

Assuming Plaintiffs are correct that the district court should not have given

---

[4] Contrary to the concurrence's suggestion, Plaintiffs never argued to the district court that regardless of its interpretation of the Oklahoma motor vehicle laws, Travis' illegal presence on the roadway was not causally connected to this accident. During the jury settlement conference, Defendants focused solely on whether the ATV qualified as an implement of husbandry under the relevant statutes in response to Plaintiffs' objection. The district court clearly did not understand Plaintiffs to be arguing causation, as its ruling was limited strictly to construing the statutory provisions. Once the district court interpreted the statutes against Plaintiffs, Plaintiffs made no attempt to inform the district court that despite its ruling on the statutes' meaning, Instruction 14 still was improper because Travis' illegal presence on the roadway had no causal connection to the accident. Plaintiff's objection was not "obviously, plainly, or unmistakably" based on causation. See Comcoa, 931 F.2d at 660.

Instruction 14, we would have to remand for a new trial on apportionment of comparative

fault. Rule 51 "was designed to prevent unnecessary new trials caused by errors in jury

instructions that the district court could have corrected if timely brought to its attention."

Reynolds v. Green, 184 F.3d 589, 595 (6th Cir. 1999); see also Beech Aircraft Corp. v.

United States, 51 F.3d 834, 841 (9th Cir. 1995) (failure to object "leaves open the

possibility of a lengthy and expensive retrial"). Remand also would give Plaintiffs a

second bite at the apple based on their own failure to act. See Horstmyer v. Black &

Decker, (U.S.), Inc., 151 F.3d 765, 771 (8th Cir. 1998) ("The purpose of Rule 51 is . . . to

prevent the losing party from obtaining a new trial through relying on a possible error in

the original trial.") (citation, quotation marks, and emphasis omitted).[5]

Because Plaintiffs did not raise this argument before the district court, we review

Plaintiffs' proximate cause argument for plain error. Giron v. Corrections Corp. of

America, 191 F.3d 1281, 1289 (10th Cir. 1999). We will reverse under the plain error

standard only in exceptional circumstances "where the error was patently plainly

erroneous and prejudicial." Id. (citation and internal quotation omitted). We find no

---

[5] The concurrence argues we should apply waivers mutually, and not make an argument for Defendants which they did not make for themselves on appeal. All waivers are not equal, however. The purpose of Rule 51 is not simply to preserve an argument for appeal, but to give the district court an opportunity to correct any perceived error. Had Plaintiffs properly objected below, the district court could have ruled on causation. Instead, Plaintiffs ask us to order a costly and burdensome retrial based on their failure to adequately bring this issue to the district court's attention. For the reasons discussed above, we decline to do so.

plain error here. The district court instructed the jury, "If you find that either party violated any one of the statutes <u>and the violation was the direct cause of the accident</u>, then such violation in and of itself would make such person negligent." (emphasis added). The district court also instructed the jury: "Direct cause means the cause which, in a natural and continuous sequence, without the intervention of any other cause, produces the loss and without which the result would not have happened." These instructions adequately explained to the jury that a party violating a statute is not negligent per se unless the violation directly caused the accident. Thus, the instructions are not patently plainly erroneous.

We presume the jury followed the district court's instructions. Hale v. Gibson, 227 F.3d 1298, 1325 (10th Cir. 2000). Putting aside the question of whether the ATV was lawfully on the road, the record contained evidence Travis was otherwise negligent. Defendants presented evidence Travis turned left without looking behind him, failed to signal his turn, and did not make a proper left turn. Thus the jury had some basis other than Travis' traffic violation to apportion a significant share of comparative negligence to him.

AFFIRMED.

**No. 01-7056,** *Reed v. Landstar Ligon*

**MURPHY**, Circuit Judge, concurring.

I concur in the result but depart from the reasoning of the majority decision insofar as it relies on Plaintiffs' purported waiver of a trial objection to Instruction 14 on the grounds of proximate cause. It is clear from the record that Plaintiffs objected to Instruction 14 on the grounds of causation, arguing that even if Travis violated Oklahoma motor vehicle law, such a violation was irrelevant in determining negligence. The majority decision reasons that the district court did not understand Plaintiffs' objection to be on the grounds of proximate cause. Certainly the failure of the district court to articulate an understanding of an objection is not the test for preservation of the objection. *See Comcoa, Inc. v. NEC Telephones, Inc.*, 931 F.2d 655, 660 (10th Cir. 1991). Moreover, Defendants' failure to assert on appeal waiver of a proximate cause objection may well constitute a waiver itself or an acknowledgment that Plaintiffs' objection was at least minimally sufficient. At any rate, there should be mutuality in the application of the waiver doctrines lest the court find itself making an unarticulated argument for one party but not the other. *See Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1227 (10th Cir. 2001) (reasoning that the court will not make arguments for a party that it did not make for itself on appeal).[1]

---

[1] The majority decision concludes that Plaintiffs' alleged waiver of a trial objection should be enforced despite Defendants' failure to raise the waiver on appeal. As support for its conclusion to ignore Defendants' waiver, the majority decision concludes "[a]ll waivers are not equal" and reasons that "Plaintiffs ask us to order a costly

(continued...)

A "district court's decision to give a particular jury instruction [is reviewed] for abuse of discretion; ultimately, however, we apply a de novo standard of review to determine the propriety of an individual jury instruction to which objection was made at time of trial." *Osteguin v. S. Pac. Transp. Co.*, 144 F.3d 1293, 1295 (10th Cir. 1998) (citation omitted); *see also O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1256 (10th Cir. 2001). This court must determine whether the jury instructions viewed as a whole "properly stated the applicable law and directed the jury to consider matters within its province." *Gardetto v. Mason*, 100 F.3d 803, 816 (10th Cir. 1996).

The district court instructed the jury as follows:

> In addition to the duty to exercise ordinary care there are also duties imposed by statutes. If you find that either party violated any one of the statutes and the violation was the direct cause of the accident, then such violation in and of itself would make such person negligent.
>
> The violation of a statute is to be deemed negligence per se if the accident (A) was caused by the statute's violation, (B) was of the type intended to be prevented by the statute and (C) the plaintiff or defendant was one of the class meant to be protected by the ordinance.
>
> There was in force and effect in Oklahoma at the time of the occurrence the following pertinent statutes:
> . . . .
>
> Okla. Stat. tit. 47, § 1151
> (E) Self-propelled or motor-driven cycles, known and commonly referred to

---

[1](...continued)
and burdensome retrial based on their failure to adequately bring the issue to the district court's attention." Such an argument is unpersuasive, however, because Plaintiffs are ultimately unsuccessful on this issue, obviating any need to order a retrial.

as "minibikes" and other similar trade names, shall not be registered under the provisions of the Oklahoma Vehicle License and Registration Act or be permitted to be operated on the streets or highways of this state . . . . The provisions of this subsection shall also apply to those motor-driven or operated vehicles known as "all-terrain vehicles," which are manufactured principally for use off the roads . . . .

Plaintiffs argue if Travis had been on the road for an agricultural purpose, his conduct would have been lawful under Okla. Stat. tit. 47, § 11-406 (permitting the use of "implements of husbandry" on Oklahoma roadways other than highways). Because, under this theory, Travis' unlawful purpose for being on the road did not contribute to the accident, there was no causal connection between Travis' violation of Oklahoma law and his death. Therefore, plaintiffs argue, the district court erred in instructing the jury that they could consider Travis' violation of Okla. Stat. tit 47, § 1151 in determining whether he was negligent.

Under Oklahoma motor vehicle law, ATVs are generally prohibited on Oklahoma's streets and highways. *See* Okla. Stat. tit. 47, § 1151(E). Section 11-406 provides for a narrow exception to this general prohibition for "implements of husbandry" driven on roadways other than highways. Okla. Stat. tit. 47, § 11-406. Contrary to Plaintiffs' argument, the ATV operator's purpose in driving on a roadway does not determine whether the ATV operator violated § 1151. Rather, the mere act of driving an ATV on a street or highway is a violation of § 1151. The ATV operator's purpose is relevant only to determine whether his otherwise unlawful conduct is deemed lawful

under the narrow exception in § 11-406.  To adopt Plaintiffs' proposed interpretation of Oklahoma law would render the general prohibition of ATVs on Oklahoma streets and highways in § 1151 meaningless.  *See TWA v. McKinley*, 749 P.2d 108, 110 (Okla. 1988) (holding when two statutes cover the same general subject, the statutes are "construed together in order to arrive at the legislative intent in any particular section").

Because the jury could have found that Travis' presence on the road in violation of § 1151 contributed in part to his death, the district court did not err in instructing the jury that they could consider Travis' violation of Oklahoma law in determining whether he was negligent.  Moreover, the instructions informed the jury that they were to consider whether the violation of Oklahoma motor vehicle law caused Plaintiffs' injury.  Accordingly, the jury instructions were proper.